UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| VANESSA LEAVITT, Plaintiff, v. WHITE PINE COUNTY, *et. al.,* Defendants. | Case No. 3:24-cv-00445-MMD-CLB<br>ORDER |

## I. SUMMARY

This is an employment dispute. Plaintiff Vanessa Leavitt asserts claims against Defendant White Pine County[1] arising out of her former employment with White Pine County Sheriff's Office ("Sheriff's Office"). (ECF No. 1 ("Complaint").) Before the Court is Defendant's motion for summary judgment (ECF No. 60 ("Motion")[2]) and motion to unseal (ECF No. 59)[3]. For the reasons discussed below, the Court grants the Motion to all but the first cause of action for sex discrimination and denies the motion to unseal without prejudice.

## II. BACKGROUND

The following facts are adapted primarily from the Complaint and the Motion.[4] These facts are undisputed unless otherwise noted.

[1]The Complaint named White Pine County Sheriff's Office and three individual Defendants, Rick Ashby. Anthony Sifre, and Melvin Lackey. (ECF No. 1 at 2-3.) These Defendants have been dismissed. (ECF Nos. 48, 51.)

[2]Plaintiff responded (ECF No. 61) and Defendant replied (ECF No. 64).

[3]Plaintiff responded (ECF No. 62) and Defendant replied (ECF No. 63).

[4]The Motion asserts facts relating to Plaintiff before she became employed with Defendant that the Court does not find to be relevant and therefore the Court does not recount these allegations here. (ECF No. 60 at 3-4.) Additionally, the Court notes an issue with exhibits filed in support of the Motion as well as errors in citations to the deposition

Plaintiff became employed with the Sheriff's Office in February 2017 as a dispatch operator. (ECF No. 1 at 4.) In August 2018, Plaintiff transferred to an administration deputy position where she primarily reported to Sheriff Scott Henriod.[5] (ECF Nos. 60-2 at 107; 61-2 at 5.) Plaintiff resigned from her employment in February 2023. (ECF Nos. 1 at 7; 60-2 at 136; 60 at 9.)

Plaintiff alleges that throughout her employment, "a dehumanizing, toxic, predatory work environment pervaded the Sheriff's Office, where male employees systematically subjected female employees . . . to sexual assaults and verbal abuse." (ECF No. 1 at 4.) Plaintiff specifically names Ashby, Sifre and Lackey as male employees who engaged in sexually harassment against her. (ECF No. 1 at 4-7.) Plaintiff alleges that Ashby, who was a Detective Sergeant, engaged in sexual harassment that consisted of touching her in an "overtly sexual manner" and cited as example that Ashby "often insisted on hugging Plaintiff" and would continue to "hold on to Plaintiff while he caressed her back, hips, and buttocks and moaning." (*Id.* at 5.) Ashby "regularly rubbed up against and caressed Plaintiff at work and often made overly sexual comments at work about Plaintiff's appearance." (*Id.*) Plaintiff alleges she reported to Sheriff Henriod that Ashby sexually harassed her after she learned in July 2022 of sexual assault allegations against Ashby. (*Id.* at 6.) Plaintiff claims Ashby raped her in 2013 and in 2016 before she went to work for the Sheriff's Office, and she reported those incidents to the County District Attorney in

transcripts. First, Defendant filed the unsealed exhibits consisting of 198 pages as one document (ECF No. 60-2) contrary to LR IR 10-3. LR IA 10-3(i) provides that "[n]o more than 100 pages of exhibits may be attached to documents filed." Second, the Court notes some errors in citation to transcripts. For example, Defendant cites to Plaintiff's deposition transcript pages 295-298 (ECF No. 60 at 9) to support its assertion about Plaintiff's employment termination, but those pages are not found in Exhibit 1. Defendant asserts that Plaintiff "had a long-term sexual relationship with Captain Swetich." (ECF No. 60 at 4.) However, the excerpt of Plaintiff's cited deposition testimony (ECF No. 60-2 at 13-19) does not support this assertion. Instead, Leavitt testified to her relationship with Swetich elsewhere in her deposition. (ECF No. 60-2 at 42-47.) Finally, because of the way exhibits are filed and the Motion's citation to the actual pages of the various deposition transcripts, they are not easy to locate and require extensive scrolling of the electronically filed exhibits. Here, the Court cites to the ECF No. of the document and page.

[5]The parties dispute whether Leavitt reported to Swetich. Swetich testified that Leavitt "reported to the Sheriff more than she did [to] me." (ECF No. 61-2 at 5.)

2022. (ECF Nos. 60 at 4; 61 at 6); *see also Head v. White Pine County,* Case No. 3:24-cv-00036-MMD-CLB ("*Head* Case"), ECF Nos. 60 at 4; 63 at 7-8.

Plaintiff alleges that Lackey, a Deputy Jailer, "repeatedly stalked and harassed" her. (ECF No. 1 at 6-7.) The Complaint provides one example. At a non-work related event in June 2022, Lackey forcibly tried to hug her. (ECF Nos. 60 at 6; 60-2 at 57-63.) After she left the party, Lackey followed her in his car, pulled up beside her and rolled down his window and said "[s]omething like that give me a real hug. That was a lame hug. Pull over. Like give me a real hug." (ECF No. 60-2 at 62.) Plaintiff reported this to Sheriff Henriod a few days later. (*Id.* at 57-63.) Plaintiff testified Sheriff Henriod talked to Lackey but she did not believe he "fix[ed] it for" her because she had to continue to interact with Lackey. (*Id.* at 64-65.) Sheriff Henriod testified he did not create a report of the incident because he did not believe it was work related and it was common for employees to socialize off-duty and it was common in that setting for them to hug.[6] (ECF Nos. 60 at 6; 59-2 at 45-47.)

Plaintiff testified that Sifre, a Detective, "was really pushy about the sexual nature of our relationship." (ECF No. 60-2 at 40.) She told him to he was not going to happen and it "got to the point where [Plaintiff] actually avoided [Sifre] and stopped talking to him." (*Id.*) Plaintiff also alleges that in September 2023, Sifre made false statements to a co-worker at her then-employment that resulted in Plaintiff's employment termination. (ECF No. 1 at 8.) In particular, Sifre "falsely accused Plaintiff of using drugs in the bathroom at the Sheriff's Office and being a 'town druggie.'" (*Id.*)

Swetich became a Captain of the Sheriff's Office in 2017 until he retired in January 2023. (ECF No. 60-2 at 103-104.) Plaintiff and Swetich had an intimate relationship that started before she became employed with the Sheriff's Office and ended a few months

---

[6]Sheriff Henriod testified as to two separate complaints he received by other female employees about Lackey's inappropriate conduct toward them. (ECF No. 59-2 at 36-47; ECF No. 60 at 7-8.)

after her employment terminated when she ceased contact with him. (ECF No. 60-2 at 42-47.)

Based on the above allegations, Plaintiff asserts the following causes of action: (1) discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 1981, 2000e, *et seq.* ("Title VII") and NRS § 613.330; (2) retaliation in violation of Title VII and NRS § 613.340; (3) gross negligence and negligence in hiring, training, supervision and/or retention; (4) defamation; and (5) intentional infliction of emotional distress. (ECF No. 1 at 8-14.)

**III. MOTION TO UNSEAL**

Defendant filed a motion to unseal limited portions of records filed in support of its Motion that had been designated as confidential under the protective order, contending it does not believe compelling reasons exist to seal these records. (ECF No. 59.) Plaintiff argues in response that Defendant failed to comply with the meet and confer requirement and failed to identify which material Defendant claims should be unsealed. (ECF No. 62.)

In the Ninth Circuit there is "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). To overcome this presumption, a party must articulate "compelling reasons" justifying nondisclosure, such as use of the record to gratify spite, permit public scandal, circulate libelous statements, or release trade secrets. *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*. (citation omitted).

The Court denies the motion to unseal without prejudice and direct the parties to meet and confer as to what specific records warrant sealing under the *Kamakana's* compelling reasons standard to overcome the presumption of public access. The fact that the records are designated as confidential under the stipulated protective order alone is insufficient to demonstrate compelling reasons. Because Plaintiff seeks for the disputed records to be sealed, Plaintiff must demonstrate that compelling reasons, supported by

specific facts, exist to supporting sealing of each item of evidence. *See id.* at 1178 (to overcome the strong presumption in favor of public access, the party seeking to seal must make particularized showings as to why the filing should be sealed and provide compelling reasons, supported by specific factual findings, for the request). Thus, the Court denies the motion to unseal (ECF No. 59) without prejudice. The Court directs both the motion to unseal and the reply (ECF Nos. 59, 63) be unsealed because they should not have been filed under seal. The exhibits attached to the motion (ECF No. 59-2) and reply (ECF No. 63-2) will remain under seal pending Plaintiff's motion to seal these exhibits.

## IV. DISCUSSION

Defendant seeks summary judgment on all claims.[7] Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). All justifiable inferences should be drawn in the non-movant's favor. *Id.* at 255. The Court will address each claim in turn.

### A. Sex Discrimination

"An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that [s]he was subjected to verbal or physical conduct of

[7]Because Nevada's anti-discrimination and anti-retaliation statutes are almost identical to their federal counterparts, the Court analyzes them under the same framework. *See Liston v. Las Vegas Metro. Police Dep't*, 908 P.2d 720, 721 n.2 (Nev. 1995) ("The action was brought pursuant to NRS 613.330, Discrimination on the Basis of Age, which is based on . . . the Age Discrimination in Employment Act (ADEA)."); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("we have previously looked to the federal courts for guidance in discrimination cases.").

a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (citations omitted). "In evaluating motions for summary judgment in the context of employment discrimination, [the United States Court of Appeals for the Ninth Circuit has] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 1113.

Defendant argues that even accepting Plaintiff's allegations in the Complaint about alleged sexual harassment as true, the alleged incidents of harassment "even if true, were sporadic and isolated" such that the conduct was not so severe and pervasive to alter the conditions of employment. (ECF No. 60 at 10-13.) Plaintiff asserts that Defendant "concedes the first two elements" and argues that she has satisfied the third element as to severe and pervasiveness of the conduct.[8] (ECF No. 61 at 13-14.) The Court agrees in part—that Plaintiff has created a genuine issue of material fact as to whether the conduct alleged here satisfies the third element.

[8]In its reply, Defendant argues that "there is confusion about Defendant's argument" and clarifies that Defendant does not concede that "Plaintiff was subjected to conduct of a sexual nature or that the conduct was unwelcome. Defendant acknowledges Plaintiff's allegations but contends they do not meet her burden or the legal standards to prove her allegations." (ECF No. 64 at 2.) As noted, the Court construes Defendant's argument as presented in the Motion to assume Plaintiff's allegations meet the first two factors. Even accepting that Defendant disputes that Plaintiff's allegations meet the first two actors, the Court finds that at a minimum, genuine issues of material facts exist as to whether Plaintiff's allegations and testimony about the alleged conduct of Ashby, Lackey and Sifre was of a sexual nature and whether the conduct was unwelcome to preclude summary judgment as to the first two factors.

Here, the conduct complained of involved not just comments, but alleged inappropriate touching by both Lackey and Ashby during Plaintiff's employment.[9] Viewing the evidence in the light most favorable to Plaintiff and construing all reasonable inferences in her favor[10], the Court finds that a rational trier of fact could find the conduct alleged in the Complaint and recited above could be severe and pervasive so as to alter Plaintiff's work environment.

Defendant also seeks summary judgment based on the *Faragher* and *Ellerth* defense because Defendant had "gold-standard policies in place to address harassment and discrimination" and Sheriff Henriod took prompt remedial actions. (ECF No. 60 at 11, 14-15.) *Faragher/Ellerth* refers to a pair of Supreme Court cases read together to establish an affirmative defense available to employers under Title VII "when the employee has been unlawfully harassed, but there has been no 'tangible employment action[;]' [then] the employer may avoid liability by proving the defense of 'reasonable care.'" *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003). "To prevail on the affirmative defense of 'reasonable care,' an employer must prove '(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by it or to avoid harm otherwise.'" *Id.* at 1177 (citation modified).

In support of the first factor, Defendant argues that Ashby was put on paid administrative leave and did not return to work after the Sheriff learned of Ashby's alleged criminal conduct. (ECF No. 60 at 14, citing in part to Henriod's deposition in the *Head*

---

[9]The parties' briefs focused extensively on Swetich, including whether the evidence supports Plaintiff's suggestion that their sexual relationship was consensual and whether Swetich had supervisory authority over Plaintiff. (ECF Nos. 60 at 4-5, 12-13; 61 at 6-7, 14-16; 64 at 4-9.) However, the Court need not resolve these issues because the Court does not consider alleged harassment by Swetich in reaching its finding as to the third factor.

[10]*See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (in considering summary judgment, a court views all facts and draws all inferences in the light most favorable to the nonmoving party).

Case.) Defendant also points to how Sheriff Henriod properly addressed Plaintiff's complaint about Lackey approaching her after a social event, and about his handling of two other employees' (Nardi and Blackham) complaints about Lackey's inappropriate conduct.[11] (*Id.*) Plaintiff responds that Sheriff Henriod's response could be construed as failure to exercise reasonable care to promptly correct sexually harassing conduct. (ECF No. 61 at 17-18.) In particular, Plaintiff points to the same evidence to argue that Sheriff Henriod's handling of the three separate complaints about Lackey shows a failure to adequately enforce Defendant's policy because the investigation involved talking to Lackey and taking no further disciplinary action. (*Id.*) Indeed, as Plaintiff testified, she did not believe Sheriff Henriod addressed Lackey's conduct because she had to continue to interact with Lackey. (ECF No. 60-2 at 64-65.) Viewing this evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, a rational jury could find that Defendant failed to exercise reasonable care to promptly correct harassing conduct. Accordingly, the Court denies summary judgment as to Defendant's affirmative defense under *Faragher/Ellerth*.[12]

**B. Retaliation**

Defendant argues that Plaintiff cannot establish the essential elements of her claim. (ECF No. 60 at 16-18.) Plaintiff counters that she has offered evidence to show a pattern of retaliation, focusing primarily on evidence that she engaged in a protected

---

[11]Defendant offered Sheriff Henriod's deposition testimony of how he took action to address other complaints about Sifre by another employee, Cecilia Nardi. (ECF Nos. 60 at 14-15; 59-2 at 20-23.) Nardi had complained that Carly Golla and Sifre were acting inappropriately in dispatch and point to an incident where they were throwing either nuts or popcorn into each other's mouth and Golla "had gotten down on her knees and made some type of comment . . . does this make it easier for you to put it in my mouth." (ECF No. 59-2 at 20.) Sheriff Henriod testified that he told Sifre that his behavior was offensive to Nardi and "that horseplay was inappropriate and for him to stay out of dispatch, especially when Cecilia is there." (*Id.* at 21.) Sheriff Henriod also testified as to an incident involving Sami Blackham where Lackey behaved inappropriately and he warned Lackey that further disciplinary action would be taken. (*Id.* at 40-43.) Sheriff Henriod also testified that he provided Sifre with additional training on their harassment policy and to avoid talking to either Nardi or Blackham "unless absolutely necessary." (*Id*. at 43.)

[12]For this reason, the Court need not address Defendant's argument as to the second factor.

activity and opposition to unlawful employment practices. (ECF No. 61 at 20-24.) The Court agrees with Defendant.

To establish a prima facie case of Title VII retaliation, a plaintiff must adequately allege that: "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; [and] (3) there was a causal link between the protected activity and the employer's action." *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (citation omitted). Here, Defendant argues that Plaintiff cannot show that she suffered an adverse employment action because she voluntarily resigned. (ECF No. 60 at 16-18.) As support, Defendant cites to Plaintiff's deposition testimony where she indicated that she resigned her employment because of pending drug charges against her.[13] (ECF Nos. 60 at 9; 60-2 at 75.) Plaintiff does not dispute that she resigned or the reason for her resignation.[14] Instead, Plaintiff points to post employment conduct that occurred about six months later in September 2023—that Sifre told her new co-worker Plaintiff was "fired for doing drugs in the bathroom of the sheriff's office" and when she complained about this to Sheriff Henriod, the "investigation collapsed when Sifre violated a direct supervisory order and contacted the witness."[15] (ECF No. 61 at 22-23.) The Court agrees with Defendant that this conduct does not amount to an employment action by Defendant to show Plaintiff suffered an adverse employment action, nor can

[13]For context, Defendant offered the deposition testimony of Marja Janet Walker (also known as Janet Bybee). (ECF Nos. 60 at 9; 60-2 at 130-133.) Walker testified that in January 2023, she and Plaintiff were separately interviewed by an NDI investigator about cocaine that she had left in a pill bottle that Plaintiff had given her, and the bottle was found by an employee at the Hotel Nevada. (*Id.*)

[14]Plaintiff's response references Shannel Head's complaint about Swetich's harassment and how Shannel Head "was forced to constructively discharge on February 13, 2023." (ECF No. 61 at 24.) However, whether Shannel Head was forced to resign because of her own circumstances is irrelevant to whether Plaintiff suffered an adverse employment action.

[15]Plaintiff's response also argues extensively about the first element—that she engaged in a protected activity by complaining about harassment and about how she opposed other unlawful employment practices. (ECF No. 61 at 20-22.) The Court does not address the first element because the Court finds Plaintiff cannot establish the second and therefore the third elements.

Plaintiff then show a causal connection to meet the third element. Accordingly, the Court grants summary judgment on Plaintiff's retaliation claim.

**C. Negligent Hiring, Training, Supervision and/or Retention**

Plaintiff's third cause of action alleges that Defendant breached a duty "to use reasonable care in the hiring, training, supervision, and retention" of Ashby, Sifre and Lackey." (ECF No. 1 at 11.) Defendant argues that Plaintiff's claim "arise[s] directly from discretionary personnel decisions," entitling it to discretionary immunity under NRS § 41.032(2). (ECF No. 60 at 18-21.) The Court agrees with Defendant.

The Nevada Supreme Court has adopted the *Berkovitz-Gaubert* test enunciated by the United States Supreme Court for determining whether acts fall within the scope of discretionary immunity. *Paulos v. FCH 1, LLC,* 456 P.3d 589, 595 (Nev. 2022) (en banc). To qualify for discretionary immunity, a state official's action must "(1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* (citing *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007)). In *Paulos*, the Nevada Supreme Court "look[s] to federal analogues" to determine whether defendant agency, there Las Vegas Metropolitan Police Department, is entitled to discretionary act immunity under NRS § 41.032(2). *Id.* The court noted that "the Ninth Circuit and other federal courts 'have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.'" *Id.* at 595 (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). The court then affirmed the granting of summary judgment in favor of the defendant, finding defendant's decision to hire and train the officer in that case involved an element of choice. *Id.*

Here, Defendant has shown that the challenged decisions involving the hiring, retention and supervision of Ashby, Sifre and Lackey similarly involved an element of judgment, particularly by Sheriff Henriod. (ECF Nos. 60 at 21; 64 at 16-17.) Plaintiff argues that Defendant's "own policies required immediate corrective action and discipline for harassment." (ECF No. 61 at 25.) But as Defendant points out, there is no dispute that

Sheriff Henriod took action in response to the complaints at issue as required under Defendant's policy. (ECF No. 64 at 16-17.) Plaintiff's dispute is with how Sheriff Henriod exercised his discretion in determining corrective action, for which Defendant is entitled to discretionary immunity. *See Ansara v. Maldonado,* 647 F.Supp.3d 958, 982 (D. Nev. 2022) (granting summary judgment on negligent, hiring, training, and supervision claim, finding these decisions relating to defendants' social service workers is appropriately entitled discretionary immunity). Accordingly, the Court grants Defendant's Motion as to the third cause of action.

**D. Defamation**

Plaintiff's defamation claim is based on statements that Sifre allegedly made to her friend and co-worker at the time, Athena Kenney, that related to Plaintiff's employment termination with Defendant. (ECF Nos. 1 at 12; 60-2 at 76-79.) Defendant argues that Plaintiff only offered hearsay evidence, Sifre denied making any statements, the statements express an opinion, and Sifre did not make the statement within the course and scope of his employment to impose liability on Defendant. (ECF No. 60 at 21-23.) Plaintiff responds that she made a formal written complaint to Sheriff Henriod about Sifre's statements[16] and argues the statements are factual and false, and Sifre was a detective at the time, so his statements were made within the scope of his employment. (ECF No. 61 at 26-28.) The Court agrees with Defendant that Plaintiff has failed to offer admissible evidence to support her claim and to show that Sifre was acting within the course and scope of his employment.

"An action for defamation requires the plaintiff to prove four elements: '(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault,

[16]Plaintiff cites to, but does not attach to her response brief, "Defendant's 1st supplemental disclosures" as support for her assertion that her written complaint to Sheriff Henriod "provides detail allegations" about what Sifre said to Kenney. (ECF No. 61 at 27.) Defendant's reply asserts that it has not been able to locate such a document. (ECF No. 64 at 17.) Regardless of whether this document exists, Plaintiff does not dispute that she relies on hearsay evidence—statements that Kenney said to her that were allegedly made by Sifre.

amounting to at least negligence; and (4) actual or presumed damages.'" *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (citations omitted).

Here, as Defendant points out in its Motion, Plaintiff relies on inadmissible hearsay evidence to show the first element. Plaintiff testified that she was working at Holiday Inn at the time the defamatory statements were made. (ECF No. 60-2 at 76-79.) According to Plaintiff, Sifre told her friend and co-worker, Athena Kenney[17], that Plaintiff was "a town druggie, that [she] was like all meth'd out. That [Athena] shouldn't hang out with [Plaintiff] because [Plaintiff] was going to ruin her life." (*Id.* at 77.) In his deposition, Sifre testified that he did not say anything to Kenney about Plaintiff.[18] (ECF No. 59-2 at 59-66.) He testified that he "didn't say anything" when asked if he "said something false [about Plaintiff] in order to try to get her fired" from the Holiday Inn. (*Id.* at 62.) However, when Sifre was later asked whether "he ever mention[ed] any allegations that Vanessa had used illegal drugs to Ms. Kenney," Sifre responded, "I don't think I did." (*Id.* at 67.) While Sifre's later response was not an outright denial as Defendant claims, Defendant has met its burden to show no genuine issue of fact exists that Sifre did not make the alleged statements to support the first element of Plaintiff's defamation claim. In response, Plaintiff failed to meet her burden of production to show that Sifre made the statements at issue. *See Anderson*, 477 U.S. at 256. As the nonmoving party, Plaintiff "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec.*

---

[17]Defendant refers to Kenney as Sifre's girlfriend. (ECF No. 60 at 17, 21,)

[18] For added context, Sifre testified about his interview with Captain Fincher. (ECF No. 59-2 at 60.) Sheriff Henriod testified that he believed Plaintiff sent him an email "indicating that Mr. Sifre was spreading rumors or something of that nature about her." (ECF No. 59-2 at 26-33) He assigned Captain Todd Fincher to investigate, but the person who allegedly made the statements to Plaintiff would not cooperate so no further action was taken. (*Id.*)

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Plaintiff has failed to do so here.

Moreover, as Defendant argues, even if Sifre made these statements to Kenney, he was not acting within the course and scope of his employment to impute the statements on Defendant. (ECF No. 60 at 23.) The fact that Sifre was employed with the Sheriff's Office, without more, does not show that he made statements about Plaintiff's former employment within the course and scope of his employment. Indeed, Sheriff Henriod directed an investigation that led to Sifre's interview when he received a complaint from Plaintiff about Sifre's alleged statements. (ECF No. 59-2 at 26-33.)

In sum, Defendant has met its burden on summary judgment. The Court thus grants Defendant's Motion as to Plaintiff's defamation claim.

**E. Intentional Infliction of Emotional Distress ("IIED")**

Defendant argues that even if Plaintiff could demonstrate that she suffered emotional distress, her claim arises from the alleged workplace conduct which Nevada courts have found to be insufficient to sustain an IIED claim. (ECF No. 60 at 26.) Plaintiff does not meaningfully respond to this argument. Regardless, the Court agrees with Defendant.

An IIED claim must be based on something more than "actions [such] as hiring and firing, project assignments, promotion and demotions, performance evaluations and other similar acts[.]" *Welder v. Univ. of S. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011); *see also id.* at 1245-46 (dismissing IIED claim because conduct upon which it was based fell under the category of "normal employment relations"); *Robinson v. Renown Reg'l Med. Ctr.*, No. 3:16-cv-00372-MMD-WGC, 2017 WL 2945727, at *3 (D. Nev. July 10, 2017) (same). For instance, "termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress theory." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993). "Discriminatory employment practices are wrong and federal [and state] law makes such conduct unlawful and provides for relief;

however, the tort of intentional infliction of emotional distress is not intended to reach every discrimination claim"—and it does not reach such claim here. *See id.* Accordingly, the Court grants Defendant's Motion on Plaintiff's fifth cause of action.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 60) is denied in part and granted in part. The Court denies the Motion as to Plaintiff's first cause of action for sex discrimination and grants the Motion as to Plaintiff's remaining causes of action.

It is further ordered that Defendant's motion to unseal (ECF No. 59) is denied without prejudice. The Court directs both the motion to unseal and the reply (ECF Nos. 59, 63) to be unsealed. The exhibits attached to the motion (ECF No. 59-2) and reply (ECF No. 63-2) will remain under seal pending Plaintiff's motion to seal these exhibits. Plaintiff will have 14 days to file a motion to seal these exhibits. Failure to timely file a motion to seal will result in the unsealing of these exhibits.

The Court refers Plaintiff's remaining claim—the first cause of action alleging sex discrimination—to the Magistrate Judge to conduct a settlement conference. The proposed joint pretrial order will be due within 30 days from the settlement conference assuming settlement is not effectuated.

DATED THIS 17th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE